Good morning. James Westerlund, Aaron Fox Schiff, representing Wells Fargo Bank, Securities Intermediary, the appellants, and the plaintiff. May it please the Court. There are two primary issues on this appeal. First, choice of law. Second, the validity of the subject life insurance policy. As the choice of law and abuse of discretion standard applies, the revelation during discovery that the trustee of the trust that owned and applied for the subject policy signed the application in Florida should have caused Florida law to apply. On a motion to dismiss, the District Court held that New Jersey law applied, but that was because the application indicated that it was signed in New Jersey. The policy says that it is subject to the laws of the state where it is signed, and the insurance company's corporate representatives confirmed that such a revelation would cause Florida law to apply to the policy. In fact, the company would have reissued the policy under Florida law by learning that information. Under Florida law, the policy cannot be challenged by the insurance company for lack of insurable interest more than two years after issuance. So, counsel, does your argument depend on us concluding that the conformity clause is a choice of law provision? Not necessarily. Isn't that the basis of the analysis that you just gave to reach the Florida result? I don't think that there's really a distinction between the conformity versus choice of law. Wait a minute. What do you mean there's no distinction? I mean, it seems to me that the distinction is that the conformity law says that the policy will be conformed to comply with the state's laws if it's necessary, so it's a remedy provision as opposed to a choice of law provision, right? So, it says that it basically establishes within the policy the right to blue pencil a provision in the policy as opposed to saying that the law of this state's going to apply generally to this policy, or have I missed the boat on this? I know I missed the boat on the last one. If I'm missing it on all the cases, I should go home and retire. Well, most of the cases that I've read on this and that we cited to you don't really go into this analysis at all. They readily assume that a conformity law is a choice of law provision, and the first district judge in this case did so as well. Some other cases have made a distinction. The AEI case in the Second Circuit, for instance, did so. But there, for one thing, they say it's subject to the law of the state, right? Subject to means controlled by, so that's why I'm saying it's really a distinction without a difference in my mind. Do you think that subject to is exactly the same as controlled by? Well, definition by, you know, there's case law, I think, on that point. I think we cited the one Nebraska case that said that. I guess I was thinking that in the insurance context, conformity clauses were there because every State Department of Insurance has different rules, and in case your policy runs afoul of one of those rules, it would conform the policy to that state's laws. Right, so the cases that have engaged in this analysis have said, you know, you have to apply procedural rules. It's not substantive law, but it's procedural rules. And what are we dealing with here? We're dealing with a contestability clause, right? And even the Bergman case analogized the contestability clause with the statute of limitations. So it's a procedural bar here, right? In Florida, it's required by statute. Life insurance policies are required to have a contestability clause in them, right? And the AEI case says you're supposed to apply, you know, conform to the law of the statute or the judicial rule of law. So that contestability clause required by the Florida statute has been interpreted by the Florida Supreme Court in the Pruco case in 2016 to say an insurance company cannot challenge the policy for lack of insurable interest more than two years after issuance. So even if you wanted to, you know, perform this conformity analysis and say it only applies to a, you know, some type of procedural bar, that's exactly what we have here. You're back to the same point. That's why I'm saying that it's a distinction without a difference, especially in this case. So as to validity, if I may, this court applies a de novo review. And we submitted admissible evidence in opposition to the insurance company's summary judgment motion, documents signed by the trustee and the insured, stating explicitly that the policy was not procured with intent to sell. All reasonable inferences from these statements must be resolved in Wells Fargo's favor because it opposed the motion for summary judgment. Wells Fargo's admissible evidence cannot be overcome by contrary circumstantial evidence on summary judgment. The evidence must be considered and determined by a jury if New Jersey law is to apply, which we believe it shouldn't. Now choice of law. The insurance company's admissions establish its reasonable expectations as to which state's law should apply and is binding upon it here. In his order denying Emeritus' motion to dismiss, Judge John Gerard, the first district judge assigned to this case, made a number of important statements. He recognized that given the fact-intensive nature of a choice of law determination, it is typically premature on a motion to dismiss. But he engaged in the analysis in any event, deciding the insurance company's motion to dismiss, but that ruling wasn't law of the case and it was subject to change based on discovery. First, he looked at the language of the policy, stating the insurance policy includes the provision. This policy is subject to the laws of the state where the application is signed. The application is signed in New Jersey, so pursuant to the contract's choice of law provision, New Jersey law applies to the party's present dispute. Next, he applied Nebraska's most significant relationship test, pursuant to the restatement, stating New Jersey was the place of contracting and negotiation and that New Jersey represents the party's justifiable expectations in which law would govern the policy. But discovery in the action and later admissions made by the insurance company show that these fundamental factual predicates for choice of law at the motion to dismiss phase were incorrect. Judge Bazis, the second district court assigned to this case in her summary judgment order, expressly recognized that Judge Girard previously found that New Jersey supplies the governing law in this case, in part because New Jersey has the most significant relationship to the transactions and the parties. But then she stated the court finds no reason to reconsider this ruling. That was an abuse of discretion. There was ample reason to reconsider this ruling based on admissible evidence that we developed in discovery and presented in our opposition to the motion for summary judgment. Block, the trustee, testified that he was almost 100 percent sure that he was not in New Jersey when he signed the application and that he was in Florida when he signed. While the agreement page for the application indicated that it was signed in Islin, New Jersey, it was ambiguous because it was signed by three different people and didn't allow each person to indicate where he signed. There was only one line, the dated outline, to indicate where the agreement page of the application was signed. But, again, there were three people who signed it. The dated outline, which states Islin, New Jersey, appears above Jerry Freed's signature. Block's signature is below Freed's signature. Block testified, quote, I had no idea that I signed a document that said it was in New Jersey when I'm sure I wasn't there at the time I signed it. I only wish there was a section of the policy, which there isn't, that said the address of each person on the signature area and I would have happily put down my right address and there wouldn't be this question. Any ambiguity in the policy is interpreted against the insurer and in favor of the policyholder and in favor of coverage. The location where Block signed the agreement page of the application is dispositive for the choice of law issue in this case. First, as we just discussed, we talked about the conformity with laws clause. Again, Judge Gerard considered it to be a choice of law clause. Judge Bassis did not. Now, while the parties have submitted conflicting case law on the issue of whether a conformity clause is a choice of law clause, the issue should be resolved by the sworn testimony of Emeritus' own officers and corporate representatives in the separate sloped case. David Volcker, Senior Vice President of Service and Operations at Emeritus, testified as a 30B6 witness that the conformity provisions means, quote, exactly what it says. The policy will be bound by the laws where the application is signed. Isn't that a conclusion of law? He's testifying as to how the company in its corporate capacity as a 30B6 witness administers the policy, how it interprets that provision that it created in its contract of adhesion. So I think it's compelling for that reason. What is the admission or admissions made by the insurance company that you mentioned a moment ago? Well, for one, I think you were talking about Judge Gerard's order or opinion, and you referenced admissions. I wrote it down. Admissions made by the insurance company. Well, here's one of them that I was just talking about, and that was David Volcker. He's the Senior Vice President of Service and Operations, and he testifies as a 30B6 witness on issues of administration by the insurance company in connection with its policy. And that's why I'm saying now that he admitted that the policy will be bound by the laws where the application is signed, because that becomes the state of issue, and that's how the company will administer it. Volcker made clear that the signature of the owner of the policy, meaning the trust through the trustee here, is what matters for purposes of the company determining which state's law will govern the policy. A separate witness, Scott Corbett, Vice President and Chief Underwriter at the insurance company, also a 30B6 witness, testified that where the proposed owner signs the application will provide the governing law for the policy, and if the company learns after the policy has been issued the owner signed in a state other than indicated in the agreement page, then the company, as relevant here, would issue a corrective policy that would reflect the actual state where the applicant slash owner signed the application. Under the restatement's most significant relationship analysis, the most compelling factor is the party's justifiable expectations. You don't have to take our word for it. Two emeritus officers and Rule 30B6 witnesses testified, under the provisions of the policy and the company's practices, to state where the owner signs the application governs. Moving on to the validity. I'll just throw this out and see if you're interested in your response. Looking at the restatement provision, Section 188, and talking about all these different factors, choice of law factors, two big ones here, I think you could argue, are that the trust that applied for the policy was located in New Jersey and the insured was located in New Jersey. But the most important factor under the provisions of the policy is where the owner of the policy, here being the trustee, signs it. And that's based on the provision in the policy that was created by the insurance company against a contract of adhesion, and that's what governs here. Separate from that, the block, the trustee, testified that he signed the application, which goes to creating the contract, negotiating the contract. He signed it in Florida. The policy was delivered to him in Florida. The company actually sent him a survey in 2008, after the policy was issued, saying, is this address of the trust correct? New Jersey. He said, no. And he crossed it out and he wrote in his Florida address, where his business address was, and says, this is the correct address. Well, what do you think Mr. Freed's expectation would have been here? I know he dropped out of the picture, but after all, it was his life that was being insured, and he was located in New Jersey. He was located in New Jersey when the policy was issued. He moved to Florida. At the time the policy was – he moved to Florida in 2010. The policy was sold in 2011. We don't know what his expectation was at that time. Counsel, why wouldn't the Nebraska Supreme Court apply Section 192 of the state where the applicant was domiciled at the time of application? Because I believe that there's a comment to that provision which says that that doesn't apply where the owner of the policy is different than the insured. In this case, that would be the trust. So the trust would govern under that circumstance. On the validity of the policy, we have signed statements from the insured, from the trustees, saying that there was no intent to sell this policy. That can't be overcome by circumstantial evidence on summary judgment. No any way you cut it. Thank you. Thank you, Counsel. Mr. Kelleher. Good morning. May it please the Court. My name is Joseph Kelleher, and I represent the Appley Emeritus Life Insurance Corp. It's a pleasure to be here with everyone this morning. The district court's thorough and well-reasoned opinion on summary judgment should be affirmed. My friends have raised two issues. One relates to the governing law. The other relates to insurable interest, and I intend to take them both in turn, starting with what we heard most about this morning, at least the governing law issue. The district court correctly found that New Jersey law governs, and the district court found that because New Jersey law has the most, New Jersey has the most significant relationship with this transaction. We think that was unquestionably correct on this record. There's no real dispute that this was a New Jersey targeted transaction. A New Jersey trust was created to take out a life insurance policy on the life of a New Jersey senior citizen. They chose to do that through New Jersey-specific application forms that stated that the trust's address was Mr. Freed's home in New Jersey. The W-9 that they submitted with the application and to the IRS also said that the trust's location was in New Jersey, and every single person who signed that application signed that signature page that said it was signed in New Jersey. I don't think there's a real dispute that this was a New Jersey targeted transaction at inception. Instead, what I hear is some argument about party expectations. But the party's expectations, the parties to this contract in 2008, the insurance company and the trust, well, the trust is the one that sent all of those New Jersey docs and reps to the insurance company. What did the insurance company do? They looked at those documents that said New Jersey. They issued a policy on New Jersey-specific forms. They issued it for delivery to the trust at its New Jersey address. The policy that they did, in fact, issue and deliver, my friend talked a lot about it. It contains this conformity with laws clause, which says that it will be subject to the laws of the state where the application is signed. The policy itself defines what that is. It says, quote, state, it says application state, colon, New Jersey. That's in the record at Appendix 1, 2, 4, 7. And then what did the insurance company do for the next two decades? It proceeded to administer the policy in conformity with New Jersey regulations. And we see that, for example, during the COVID epidemic, a letter was sent by the insurance company to Wells Fargo that said the New Jersey governor has issued an executive order that provides additional rights to folks like you under New Jersey law who hold New Jersey policies that relate to extended grace notice periods, extended lap notice periods, and financial protections. If there's a financial hardship, an inability to pay, there's a restructuring. That was the New Jersey executive order. It was treated that way. There's no question about the party's intent. What matters most here is the intent at inception, because this is a case about whether there was an insurable interest at inception, and therefore whether the policy was valid at inception. So that's the most important thing. But if you were to look to the other parties to this insurance contract, because it was sold periodically, every single one of them has carried this policy on their books and records as a New Jersey policy, including Wells Fargo and including Wells Fargo's client, the hedge fund on whose behalf they are the securities intermediary, who before they bought this policy conducted due diligence into this policy and determined this policy had substantial insurable interest risk, precisely because this was a New Jersey trust-issued policy. The district court, we think, got this exactly correct. Now, we heard a lot today, and we have heard in the papers, about this other case, the Sloat case and the so-called admissions by the emeritus representatives in those cases. So let me be clear about this. The emeritus witness, who is not a lawyer and who is not designated on the topic of legal conclusions, was asked, how does emeritus interpret this contract, excuse me, this conformity provision? He said, well, we understand it to mean exactly what it says. That's the phrase he said, exactly what it says. He went on to explain that emeritus administers and conforms policies to the laws and regulations of the state in which the application says that it was signed. In the Sloat case, the application said that it was signed in Florida, and therefore he was asked, so what laws did emeritus conform to in the Sloat case? He said, Florida, because the application said it was signed in Florida. This is very clear. I'd refer the court to the appendix 2812 and also separately 991. He makes it very clear that that's what's happening. So what happened in this case? They say call them admissions. They're not. They want to apply that testimony into this case. Well, what happened in this case? In this case, the application said it was signed in Delaware. The policy said application state Delaware. And so they conformed the regulation of this policy, the administration, to I said Delaware. I meant New Jersey. Every time that I said Delaware, I meant New Jersey. Forgive me. I have a lot of Delaware cases. This one's definitely New Jersey. And that's why we have the letter about the New Jersey rights and the New Jersey governor. So we think the district court got this exactly correct. There was talk about, Judge Gratz, the cases that have interpreted this provision and whether it is a choice of law provision or not. Almost uniformly, the courts that actually grappled with this have said it is not a choice of law provision, including multiple cases that have considered emeritus as exact same conformity clause, the Leon case we cited, and the Slote case, which is the very case that my friend talks so much about. In that case where his firm represented the securities intermediary, they told Judge Hall in the District of Delaware that it is not a choice of law provision. She said, I'm glad you said that because I agree with you. It is not a choice of law provision. It's only in this case that they're saying that it is somehow a choice of law provision. We just look at the language. We look at the AEI case, which also that's a Second Circuit case that found that it was not, that a conformity clause is not a choice of law provision. By the way, they also, that was their case. And look at the factors and you apply them to our conformity clause. It says conformity. It doesn't say choice of law. It says subject to. It doesn't say shall be governed by. It doesn't even state any state at all. We think the district court definitely got the choice of law question absolutely correct. We don't think there's any error or any issue about that. Unless there are questions on governing law, I was going to turn, and I will turn, to the insurable interest question. I was a little surprised. I heard almost nothing, almost nothing about the insurable interest issue that they've raised here today. Certainly in their papers they've talked about it. But I actually wrote it down on my notepad. I think it was about ten seconds left when my friend turned to this. I think there's a reason for that. I think that they know that there's absolutely no error in what the district court did here. So instead of responding to things that were said because, in fact, almost nothing was said, I think I'll just respond to some of the arguments that they make in their reply brief that we haven't yet had an opportunity to discuss. And if there's any questions, of course, certainly I'm happy to answer those. The district court held that this policy was undoubtedly a stolen policy and that no rational juror could conclude otherwise. I think that's absolutely correct. The record is super clear. Mr. Binday was running a stolen program. That's what his cousin, Mr. Block, testified that he was doing. That's what Ms. Robinson, his employee, testified as to not just what he was doing but how he was doing it, the steps of the program, what the district court called his stolen playbook. And then we see the actual documents for this policy show that it went through each and every one of those steps. I don't think there's any real question from my friends that this was a stolen product from Binday's stolen program. Instead, they make this other argument. They say that somehow a rational juror could find that there was an estate planning purpose for this policy. And there's so many problems with that, but let me just start with this. They don't have a single witness. They don't have a single witness who at any trial would get up and say that there was an estate planning policy purpose for this policy or anything like that. Now, in a normal case, okay, and this is definitely not a normal insurance case, but in a normal insurance case, even if the insured had passed, you would have individuals who could at least shed some light on that question. You would have, for example, the insurance professional, the agent, the producer, who sat with the insured, discussed their needs and their goals, assessed the suitability of the product, right, and had those conversations, filled out the application or helped the insured fill it out, sat there, watched him sign it while he signed it. You might also have CPAs that might have some knowledge and submit financial statements or trustees. In this case, the insurance producer, Kergel, he admits he never met Mr. Freed, never spoke to him, has no idea about Mr. Freed. All he did, signed whatever papers Binday told him to sign without really looking at him. Mr. Block, the CPA and the trustee, he said essentially the same thing. He had never met, he had not met Mr. Freed. He had not spoken to Mr. Freed. All he did was sign whatever Binday documents Binday sent to him. So there just are no witnesses to stand behind for them to even submit this to a jury. I don't recall it and I think I looked for it, but maybe you can tell me. Is there anything in the record that explains how Mr. Freed came to be the insured? For that very specific and narrow question, I take you to mean that how he came to happen upon Mr. Binday or how Mr. Binday happened to find him. There is not. Yes, that's my question. There is not. We don't think that is a material fact and certainly not one that on this record could ever cause a rational juror to come to the conclusion that there was an estate planning purpose for this policy. What we do have, though, Your Honor, is Mr. Binday's own email. And this is relied upon by the district court. It's in the record at appendix 1110. I'm paraphrasing, but this is the one where he's talking to H.M. Ruby. And what he's saying to them is, look, don't kid us. There is no estate planning purpose for your program. And then he says, quote, unquote, every policy we expect that we send to you, we expect to be sold. That email was written in July of 2007. The free transaction was already in the works at the Binday shop at that point. That's in the record. It was already working since at least June. So every policy, that relates also to the free policy. Every policy was intended to be resold. There is no estate planning purpose for this. We saw, and this is important, in their reply brief for the very first time, they argued that the district court erred because supposedly that email is inadmissible. That argument is wrong and it's been waived. It's been waived because although they did raise it below, the district court disagreed with them. She relied upon this document, cited it in her opinion. If they thought that was error, they needed to raise that in their opening brief with this court. They didn't mention the email once. There's not one single word about its complete silence. They raised it for the very first time in their reply. That's waived. It's also just not true that that document couldn't be reduced to admissible form. It was, in fact, admitted into evidence at Binday's criminal trial. That's where we found it, on the docket of his criminal trial. The government introduced it, argued it to the jury. They say we can't meet hearsay exceptions like business record and the residual clause. We can meet all of them. It was written by a person with knowledge. Binday is the person that everyone points to as the person having knowledge. It was written at or created at or near the time I explained the Binday transaction was already in the works. And it has enormous guarantees of truthfulness if one were to look to the residual exception because it's consistent with what everyone was saying, all the record evidence. Counsel, if New Jersey law applies and if this is a STOLE policy, is it void ab initio? Yes, absolutely. So then in the law, it never existed. Is that right? That is correct, under the Berman decision. Would purchasers of policies that are determined to be STOLE policies be entitled to have their premiums refunded? It's a great question. It is, in fact, addressed by the New Jersey Supreme Court in the Berman decision. And what they say, in a nutshell, is no, unless you can prove an entitlement. This is not a situation like a contract that is merely void abol where the policy is rescinded. Instead, this is an illegal contract, and the general rule is that parties to illegal contracts are left where they are found without restitution. The New Jersey Supreme Court said that an investor can try to prove essentially one of the exceptions under the restatement for that rule if they make a claim for it. My friends did make such a claim. They brought such a claim in this case, but they dropped it. They amended the complaint to drop that claim, and the reason was the district court was about to make them produce more of their documents, which showed that they overwhelmingly knew what they were buying. They knew this was a STOLE policy, so they said, well, instead of us having to produce all these documents, we're just going to withdraw the claim. So, excellent question. It is as I said it, but it's academic in this case because they've withdrawn the claim. I see I'm running low on time. I will say that at the very highest level, they don't have a single witness. The mountain of evidence showing that this policy was a STOLE policy is enormous. No rational juror could possibly fail to conclude. I assume that's why we heard literally 10 seconds about this, and I therefore respectfully request that the court affirm the district court's decision. And unless there are any further questions, it's been a pleasure, and I thank you. Thank you, counsel. All right, Mr. Westerlin, you used up your time. We'll allow a minute to respond if you would like to. Sure. All right. If I may. So, the Binday email, I think, should be the one that I should focus on for a moment here. Because there are two things. One, the district judge clearly in her statements, in her opinion, was weighing the evidence. She wasn't going to leave her common sense at the door. By doing that to apply your common sense, you are necessarily weighing the evidence. You're not allowed to do that on summary judgment. And the second point on this email, if you read the email itself, it doesn't really matter what Binday's thoughts were on this. The alleged investor here is alleged to be H.M. Ruby, the other party to this email chain. If you read that email, Tapiero, the other person from H.M. Ruby, was raising concerns about the trust, about the beneficiary. In the preceding email to the subject email, he says, I have a big problem with this. I want an attorney representing the insured to either prepare these trusts or review them. They want legitimate trusts. That's the party that matters in that email. And a jury needs to weigh that evidence in consideration with the other evidence in the case to determine what it means. Thank you.